UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | MDL Case No. 17-md-02801-JD |
| | Case No. 17-cv-07046-JD |
| | **FINAL JURY INSTRUCTIONS** |

The Court will give these final jury instructions for the *Avnet* trial, Case No. 17-cv-7046.

**IT IS SO ORDERED.**

Dated:  May 17, 2023

_____
JAMES DONATO
United States District Judge

United States District Court
Northern District of California

## INSTRUCTION NO. 1

### DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case. You will each be given a copy of these instructions to refer to during your deliberations.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts. It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law. Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, gender, sexual orientation, profession, occupation, economic circumstances, or position in life or in the community. You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important. Please do not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return -- that is a matter entirely up to you.

INSTRUCTION NO. 2

CLAIMS AND DEFENSES

I will give you a brief summary of the positions of the parties.

The plaintiff is Avnet, Inc., referred to as "Avnet."  The defendants are Nippon Chemi-Con Corporation and United Chemi-Con Inc., referred to as "NCC" and "UCC."  Defendants manufactured and sold one or more types of aluminum and tantalum capacitors.

Avnet alleges that defendants and others conspired directly and indirectly with each other in an overarching scheme to control and set the prices of their aluminum and tantalum capacitors sold to United States purchasers, including Avnet, from at least November 2001 through at least January 2014.  Avnet has the burden of proving this alleged conspiracy.

The defendants deny Avnet's claims.

# INSTRUCTION NO. 3

## BURDEN OF PROOF -- PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

# INSTRUCTION NO. 4

## CORPORATIONS -- FAIR TREATMENT

The parties in this case are corporations. All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers, performed within the scope of their authority. An act is within the scope of a person's authority if it is within the range of reasonable and foreseeable activities that an employee, agent, director, or officer engages in while carrying out that person's business.

## INSTRUCTION NO. 5

### WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I may instruct you to accept as proved.

INSTRUCTION NO. 6

WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

3.  Testimony that was excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered.

4.  Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

<u>INSTRUCTION NO. 7</u>

DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

# INSTRUCTION NO. 8

## RULING ON OBJECTIONS

There are rules that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer objected. If I overruled the objection, the question was answered or the exhibit was received. If I sustained the objection, the question was not answered, or the exhibit was not received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

## INSTRUCTION NO. 9

### DEPOSITION IN LIEU OF LIVE TESTIMONY

During the trial, you heard testimony by witnesses in the form of previously recorded depositions rather than live here in court. A deposition is the sworn testimony of a witness taken before trial. The witness was placed under oath to tell the truth, and lawyers for each side asked questions. The questions and answers were recorded.

Insofar as possible, you should consider deposition testimony presented to you in court in lieu of live testimony, in the same way as if the witnesses had been present to testify.

United States District Court
Northern District of California

# INSTRUCTION NO. 10

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness said, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability, such as whether the testimony is being given under a cooperation obligation in a settlement agreement, though the existence of any settlements must not influence your consideration of the case.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses gave different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

# INSTRUCTION NO. 11

## EXPERT OPINION

You have heard testimony from expert witnesses who testified to opinions and the reasons for their opinions. This opinion testimony was allowed because of the education or experience of the expert witness.

Such opinion testimony should be judged like any other testimony. You may accept it, reject it, or give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

United States District Court
Northern District of California

## INSTRUCTION NO. 12

## CHARTS AND SUMMARIES

During trial, certain charts and summaries were shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Some of those charts or summaries were admitted into evidence, while others were not. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

FOREIGN LANGUAGE TESTIMONY

You heard witnesses testifying in Japanese. Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter. Although you might know Japanese, and be tempted to rely on your own understanding of the language, you cannot do that because it is important that all jurors consider the same evidence. You must accept the interpreter's translation of the witness's testimony, and disregard any different meaning or interpretation from any other source, including your own understanding of the language.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

United States District Court
Northern District of California

United States District Court
Northern District of California

## INSTRUCTION NO. 14

### TRANSLATED DOCUMENTS

You saw English translations of documents that were written originally in Japanese. You must accept the translation of the document, and disregard any different meaning or interpretation from any other source, including any understanding of the foreign language that you might have. The translation is the evidence, not the foreign language in the original document. This is important to ensure that all jurors consider only the same evidence.

STIPULATIONS OF FACT

The parties have agreed to certain facts that I will now read to you. You must treat these facts as having been proved.

Certain electrolytic capacitor manufacturers -- but not others -- were convicted of violating the United States antitrust laws. These convictions are conclusive evidence that the manufacturers which pleaded guilty engaged in the violations stated in their plea agreement during the periods specified in the plea agreement.

1. Defendant Nippon Chemi-Con Corporation pleaded guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and rigging bids of electrolytic capacitors sold in the United States and elsewhere in violation of the Sherman Antitrust Act, 15 U.S.C. § 1."

   a. For purposes of NCC's guilty plea, the "relevant period" is that period beginning at least as early as November 2001 until in or about January 2014. During the relevant period, NCC was a corporation organized and existing under the laws of Japan. NCC had its principal place of business in Tokyo, Japan.

   b. During the relevant period, NCC, through its officers and employees, including high-level personnel of NCC, participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors manufactured outside of the United States and sold in the United States and elsewhere. In furtherance of the conspiracy, NCC, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During certain of these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

   c. During the relevant period, NCC and its coconspirators manufactured electrolytic capacitors outside the United States and sold them in the United States or for delivery

United States District Court
Northern District of California

to the United States. During the relevant period, electrolytic capacitors sold by one or more of the conspirator firms traveled in, and substantially affected, interstate commerce.

        d.      Acts in furtherance of this conspiracy were carried out within the Northern District of California. Electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

    2.      Defendant United Chemi-Con did not plead guilty.

    3.      Seven other manufacturers of electrolytic capacitors who are not parties to this trial also pleaded guilty.

        a.      During the relevant period, each nonparty manufacturer of electrolytic capacitors who pleaded guilty participated in a conspiracy among manufacturers of electrolytic capacitors, the primary purpose of which was to fix prices and rig bids of certain electrolytic capacitors sold in the United States and elsewhere. In furtherance of the conspiracy, each nonparty manufacturer of electrolytic capacitors who pleaded guilty, through its officers and employees, at times engaged in discussions and attended meetings with representatives of other manufacturers of electrolytic capacitors. During certain of these discussions and meetings, the conspirators agreed to fix the price and/or rig bids of certain electrolytic capacitors to be sold in the United States and elsewhere.

        b.      During the relevant period, each nonparty manufacturer of electrolytic capacitors who pleaded guilty and their coconspirators manufactured certain electrolytic capacitors outside the United States and sold them in the United States or for delivery to the United States. During the relevant period, certain electrolytic capacitors sold by one or more of the conspirator firms traveled in interstate commerce.

        c.      Acts in furtherance of this conspiracy were carried out within the Northern District of California. Certain electrolytic capacitors that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District.

        d.      Each nonparty manufacturer that entered into a plea agreement pleaded guilty to participating in "a conspiracy to suppress and eliminate competition by fixing prices and

rigging bids of certain electrolytic capacitors in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1." I will refer to this as "the conspiracy."

4. Matsuo Electric Co., Ltd., which is not a party to this trial, pleaded guilty to the conspiracy, for a "relevant period" beginning at least as early as November 2001 until in or about January 2014. Matsuo employee Satoshi Okubo also pleaded guilty.

5. ELNA Co., Ltd., which is not a party to this trial, pleaded guilty to the conspiracy, for a "relevant period" beginning at least as early as August 2002 until in or about January 2014. ELNA employee Tokuo Tatai and former employee Satoshi Okubo also pleaded guilty.

6. Hitachi Chemical Co., Ltd., which is not a party to this trial, pleaded guilty to the conspiracy, for a "relevant period" beginning at least as early as August 2002 until at least as late as March 2010.

7. Holy Stone Holdings Co., Ltd., which is not a party to this trial, pleaded guilty on behalf of its former subsidiary, Holy Stone Polytech Co., Ltd. ("HPC"), to participating in the conspiracy, for a "relevant period" from in or about April 2010 until in or about January 2014.

8. NEC TOKIN Corporation, which is not a party to this trial, pleaded guilty to participating in the conspiracy, for a "relevant period" beginning at least as early as April 2002 until in or about December 2013.

9. Nichicon Corporation, which is not a party to this trial, pleaded guilty to participating in the conspiracy, for a "relevant period" beginning at least as early as November 2001 until in or about December 2011.

10. Rubycon Corporation, which is not a party to this trial, pleaded guilty to participating in the conspiracy, for a "relevant period" beginning at least as early as August 2002 until in or about January 2014.

11. Neither Panasonic/SANYO nor any of its employees was indicted or convicted of violating the U.S. antitrust laws. In 2015, Panasonic applied for and was granted amnesty for itself and its employees under the DOJ's Corporate Leniency Program. In doing so, Panasonic admitted to violating the U.S. antitrust laws and agreed to cooperation obligations with the DOJ's

investigation of the capacitors industry similar to those agreed to by the entities and persons who pleaded guilty.

OVERVIEW OF ANTITRUST CLAIMS

Avnet alleges that defendants violated the antitrust laws by agreeing, conspiring, contracting, or combining to fix prices, rig bids, or otherwise suppress competition in the markets for aluminum and tantalum capacitors, and that this conspiracy caused an increase in the prices of aluminum and tantalum capacitors that were billed to or shipped to the United States. Avnet asserts that this increase in prices caused it injury.

To establish a violation of the antitrust laws, Avnet must prove the following by a preponderance of the evidence:

1.    the existence of a contract, combination, or conspiracy between or among at least two entities to set, fix, raise, maintain, or stabilize prices, rig bids, or otherwise suppress competition in the markets for aluminum and tantalum capacitors;

2.    that each defendant knowingly became part of that conspiracy, contract, or combination;

3.    that the conspiracy, contract, or combination occurred in or affected interstate or import commerce in the United States; and

4.    the anticompetitive conduct caused Avnet to pay more for aluminum and tantalum capacitors billed to or shipped to the United States than it otherwise would have.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular defendant, then you must find for that defendant and against Avnet on Avnet's price-fixing claim. If you find that the evidence is sufficient to prove all four elements as to a particular defendant, then you must find for Avnet and against that defendant on Avnet's price-fixing claim.

United States District Court
Northern District of California

INSTRUCTION NO. 17

CONSPIRACY, CONTRACT, OR COMBINATION

Avnet alleges that defendants participated in a conspiracy to restrain trade by fixing, raising, maintaining, and stabilizing the price of aluminum and tantalum capacitors. A conspiracy is an agreement or understanding between two or more persons to restrain trade by fixing, raising, maintaining, and stabilizing the price of aluminum and tantalum capacitors.

Avnet must prove both of the following elements by a preponderance of the evidence:

1.    that the conspiracy existed; and

2.    that one or more defendants knowingly participated in that conspiracy. To act knowingly means to participate voluntarily or intentionally, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement or understanding itself may have been entirely unspoken.

A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members need not have agreed on the details of the conspiracy, so long as they agreed on or mutually understood the essential nature of the plan. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement or understanding. It is also not necessary that all of the means or methods claimed by Avnet were agreed upon to carry out the conspiracy,

nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members.

It is the agreement to set, fix, raise, maintain or stabilize the price of aluminum and tantalum capacitors that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

Avnet may prove the existence of the conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did, and the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

I have instructed you, based on the parties' agreement, that UCC is a wholly-owned subsidiary of NCC. Under the law, a parent corporation and its wholly-owned subsidiary cannot enter into a price-fixing conspiracy with one another only, because they are viewed as a single economic unit for antitrust purposes. By the same token, if you find that NCC and UCC engaged in coordinated activity together in furtherance of an anticompetitive scheme, then you must find that NCC and UCC shared a common purpose; that is, one entity cannot innocently advance an anticompetitive scheme for a legitimate business purpose while its parent or subsidiary company purposely advances the very same scheme for an illegal, anticompetitive purpose.

## INSTRUCTION NO. 18

### PARTICIPATION OR INTENT

Before you can find that a defendant was a member of the conspiracy alleged by Avnet, the evidence must show that the defendant knowingly joined in the unlawful plan at its inception, or at some later time, with the intent to further some object or purpose of the conspiracy.

To act knowingly means to participate deliberately and not because of mistake, accident, or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played.

Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator. A company that knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if it had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether a defendant was a member of the conspiracy, you should consider only the evidence about that particular defendant's statements and conduct, including any evidence of that defendant's knowledge and participation in the events involved and any other evidence of that particular defendant's participation in the conspiracy alleged. You may not find that a defendant was a member of a conspiracy based only on its association with or knowledge of wrongdoing, but it is a factor you may consider to determine whether a defendant was a member of the conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.

Once you have found that a defendant is a member of a conspiracy, it is presumed to remain a member and is responsible for all actions taken by all coconspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned.

Remember that because UCC is a wholly-owned subsidiary of NCC, if you find that NCC and UCC engaged in coordinated activity together in furtherance of an anticompetitive scheme, then you must find that NCC and UCC shared a common purpose.

## INSTRUCTION NO. 19

## CORPORATIONS AND AGENCY

Under the law, a corporation is a person, but it acts only through its agents. A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly-owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or with apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest or fraudulent manner.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment or with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or with apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by a preponderance of the evidence. All persons, including corporations, are equal before the law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>INSTRUCTION NO. 20</u>

EVIDENCE OF INFORMATION EXCHANGE

Evidence has been introduced concerning the exchange of proprietary, confidential information among defendants and other entities about their prices for aluminum and tantalum capacitors. Avnet has alleged that such exchanges were part of, and made in furtherance of, a conspiracy to fix prices.

The fact that defendants exchanged price information is not by itself illegal, and does not necessarily establish an agreement to fix prices. There may be other, legitimate reasons that would lead competitors to exchange price information, and the law recognizes that exchanges of pricing and other proprietary information may enhance competition and benefit consumers. On the other hand, if you find that confidential information was exchanged and that defendants offer no reasonable explanation as to why they were exchanging that information, you may consider whether it was being exchanged as part of an agreement to fix prices, along with all of the other evidence bearing on whether there was an agreement to fix prices.

# INSTRUCTION NO. 21

## EVIDENCE OF PRICES CHARGED

Evidence of the prices actually charged by defendants for aluminum and tantalum capacitors has been admitted to assist you in deciding whether defendants agreed to fix prices, as claimed by Avnet. Such evidence may lead you to conclude that defendants never entered into the price-fixing conspiracy. Or it may lead you to conclude that defendants made an agreement but undercut one another, offered prices different from those agreed upon to certain customers, or at certain times failed to live up to the agreement. If you find that defendants agreed or conspired to fix prices, the fact that they did not stick to their agreement on every occasion or for every customer is not a defense.

EVIDENCE OF COMPETITION

Evidence that defendants actually engaged in price competition in some manner has been admitted to assist you in deciding whether they entered into the alleged conspiracy to set, fix, raise, maintain, or stabilize prices. If you find that such a conspiracy existed, it is no defense that defendants actually competed with each other in some respects, or failed to eliminate all competition between themselves. Similarly, a price-fixing conspiracy between competitors is unlawful even if it did not extend to all products sold by defendants or did not affect all of their customers or transactions.

INVOCATION OF THE FIFTH AMENDMENT BY A NON-PARTY WITNESS

Under the Constitution, a person has the right to refuse to answer questions that may tend to incriminate him or her in criminal activity.

During this case, Anthony Olita, Ikuo Uchiyama, and Takeshi Matsuzaka refused to testify by exercising their privilege against self-incrimination. With respect to these witnesses' refusal to testify, you may, but are not required to, infer that their testimony would have been unfavorable to UCC or NCC if and only if you find that the witness is sufficiently associated with UCC or NCC so as to justify the adverse inference. Whether the witness is sufficiently associated with a party to justify an adverse inference depends upon the total circumstances of the case. For example, a witness who is a past or present employee, officer or agent of a party may be, but is not necessarily, sufficiently associated with that party to justify an adverse inference. Likewise, a coconspirator may be sufficiently associated with a party to permit the drawing of an inference adverse to the party if the coconspirator refuses to testify.

If, however, you find that the witness is not sufficiently associated with UCC or NCC, you are instructed that you are not to attach any significance to the witness's refusal to testify. In other words, you should not make any assumption or speculate why the witness chose to exercise his constitutional privilege. In addition, if the witness is not sufficiently associated with the parties, you are not to infer anything adverse or unfavorable to the party in the case because the witness refused to testify.

CAUSATION AND INJURY

If you find that defendants have violated the antitrust laws as alleged by Avnet, then you must decide if Avnet is entitled to recover damages from defendants.

Avnet is entitled to recover damages for an injury to its business or property if it can establish these elements of injury and causation:

1. Avnet was in fact injured as a result of defendants' violations of the antitrust laws; and

2. Defendants' illegal conduct was a material cause of Avnet's injury.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Avnet to establish that it is entitled to recover damages, it must prove that it was injured as a result of defendants' alleged violations of the antitrust laws. Proving the fact of damages does not require Avnet to prove the dollar value of its injury. It requires only that Avnet prove that it was in fact injured by defendants' antitrust violations. If you find that Avnet has established that it was in fact injured, you may then consider the amount of Avnet's damages. It is important to understand, however, that injury and amount of damage are different concepts, and that you cannot consider the amount of damage unless and until you have concluded that Avnet has established that it was in fact injured.

Avnet must also offer evidence that establishes by a preponderance of the evidence that defendants' illegal conduct was a material cause of Avnet's injury. This means that Avnet must have proved that some damage occurred to it as a result of defendants' antitrust violations, and not some other cause. Avnet is not required to prove that defendants' antitrust violations were the sole cause of its injury; nor need Avnet eliminate all other possible causes of injury. It is enough if Avnet has proved that the alleged antitrust violation was a material cause of its injury.

In summary, if Avnet can establish that it was in fact injured by defendants' conduct and that defendants' conduct was a material cause of its injury, then Avnet is entitled to recover damages for the injury to its business or property.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>INSTRUCTION NO. 25</u>

TRADE ASSOCIATIONS

In this case, Avnet claims that capacitor manufacturers participated in industry meetings and used those meetings to conspire to fix prices, specifically to control and set the prices of their aluminum and tantalum capacitors sold to United States purchasers and purchasers worldwide.

Businesses that are actual or potential competitors may lawfully form into trade, industry, or professional associations or similar organizations ("trade associations") to advance common interests, and may communicate or meet with one another in furtherance of lawful trade association activities. The law does not prohibit persons who are otherwise competitors from joining together to carry out lawful and legitimate activities. For example, trade associations may lawfully keep members informed and hold meetings among their members for topics such as new or changed services, technology, standard practices, or legislation and regulations in the industry. But members of such organizations who compete with each other are not permitted to use membership in their organizations to restrain competition.

Mere membership in a trade association does not establish liability, even if that association is being used for an illegal purpose. No inference that the charged conspiracy was formed or existed may be drawn from the mere fact that there is a trade association, that a defendant was a member of a trade association, or that certain of defendants' officers/employees attended meetings of the trade association.

Nevertheless, you may consider trade association membership, meetings, and discussions along with all the other evidence, in determining whether a defendant entered into the alleged conspiracy.

The issue you must decide is whether Avnet proved that defendants used the industry meetings and its challenged practices to conspire to fix prices.

In deciding whether this was an antitrust violation, you are to follow the instructions I have given concerning whether the conduct constituted an illegal conspiracy.

DAMAGES -- INTRODUCTION AND PURPOSE

If you find that defendants violated the antitrust laws and that this violation caused injury to Avnet, then you must determine the amount of damages, if any, Avnet is entitled to recover.

The fact that I am giving you instructions concerning the issue of Avnet's damages does not mean that I believe Avnet should, or should not, prevail in this case. If you reach a verdict for defendants on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give.

The law provides that Avnet should be fairly compensated for all damages that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer -- what we sometimes refer to as punitive damages -- or to deter particular conduct in the future.

Furthermore, you are not permitted to award to Avnet an amount for attorneys' fees or the costs of maintaining this lawsuit.

CALCULATION OF DAMAGES

You are permitted to make just and reasonable estimates in calculating Avnet's damages.

You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation. Avnet must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that Avnet has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

INSTRUCTION NO. 28

DAMAGES FOR PURCHASERS

If you have determined that there was an unlawful conspiracy among competitors to fix prices that caused injury to Avnet as it has alleged, you must then determine the amount of damages to award to Avnet. The proper way to calculate Avnet's damages is to determine the difference between the prices Avnet actually paid for aluminum and/or tantalum capacitors, and the prices Avnet would have paid had there been no conspiracy to fix prices. This is referred to as the overcharge.

**INSTRUCTION NO. 29**

JOINT AND SEVERAL LIABILITY

Each participant in a conspiracy that violates the antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy. This means that each conspirator is fully liable for all of the damages caused by the conspiracy, and not solely for damages caused by that individual conspirator. One who knowingly joins an ongoing conspiracy is liable for the previous acts of the other conspirators in furtherance of the conspiracy.

If you find that Avnet has proven the existence of the alleged conspiracy, that one or both defendants participated in the conspiracy, and that Avnet is entitled to recover damages based on the other instructions in this case, then the defendant(s) who participated in the conspiracy would be liable for all damages caused by the conspiracy.

Thus, in that event, the conspiring defendant(s) would be liable for overcharges on all purchases of aluminum and tantalum capacitors by Avnet from all members of the conspiracy, and not merely on purchases from the conspiring defendant(s). If, however, you find that any of the other alleged conspirators were not a member of the conspiracy, then the defendant(s) would not be liable for damages based on Avnet's purchases from those alleged conspirators.

United States District Court
Northern District of California

1      <u>INSTRUCTION NO. 30</u>

2      NOMINAL DAMAGES

3      The law that applies to this case authorizes an award of nominal damages.  If you find for

4   Avnet but you find that Avnet has failed to prove damages as defined in these instructions, you

5   must award nominal damages.  Nominal damages may not exceed one dollar.

DUTY TO DELIBERATE

When you begin your deliberations, elect one member of the jury as your presiding juror who will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict, whether liable or not liable, must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially. Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, gender, sexual orientation, profession, occupation, economic circumstances, or position in life or in the community.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong.

CONSIDERATION OF THE EVIDENCE -- CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet social media site, blog, website or other feature. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter, and report the contact to the Court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the Court immediately.

United States District Court
Northern District of California

## INSTRUCTION NO. 33

### USE OF NOTES

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

INSTRUCTION NO. 34

COMMUNICATION WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through Ms. Clark, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone -- including me or Ms. Clark -- how the jury stands, numerically or otherwise, on any question submitted to you, including the question of the liability of the defendants, until after you have reached a unanimous verdict or have been discharged.

## INSTRUCTION NO. 35

## RETURN OF VERDICT

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise Ms. Clark that you are ready to return to the courtroom.