**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | MDL Case No. 3:17-md-02801-JD |
| THIS DOCUMENT RELATES TO:<br><br>*Avnet, Inc. v. Hitachi Chemical Co., Ltd., et al.,* Case No. 17-cv-7046 | **PLAINTIFF AVNET, INC.'S MOTION FOR ATTORNEY'S FEES AND COSTS PURSUANT TO 15 U.S.C. § 15(a), FEDERAL RULE OF CIVIL PROCEDURE 54(D), AND LOCAL RULES 54-1 AND 54-5** |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that Plaintiff Avnet, Inc. ("Avnet") hereby moves for an award of its reasonable attorney's fees and costs under 15 U.S.C. § 15(a), Federal Rule of Civil Procedure 54(d), and Local Rules 54-1 and 54-5.

On May 22, 2023, the jury rendered a unanimous verdict for Avnet against Defendants Nippon Chemi-Con Corporation ("NCC") and United Chemi-Con, Inc. ("UCC," and collectively with NCC, "Defendants") for damages under Section 1 of the Sherman Act and Section 4 of the Clayton Act in the amount of $89,244,000. *See* Case No. 3:17-md-2801-JD ("MDL"), ECF No. 1932; Case No. 3:17-cv-07046-JD, ECF No. 381 (the "Verdict").

Pursuant to 15 U.S.C. § 15(a), the Verdict was automatically trebled, bringing Avnet's damages award to $267,732,000. The total amount of Avnet's prior settlements in this action is $117,055,000. *See* MDL ECF No. 1939 (Decl.).

Accordingly, on June 2, 2023, Avnet submitted a proposed final judgment in the amount of $150,677,000, which constituted Avnet's trebled damages, offset by the amount Avnet had already recovered in prior settlements. MDL ECF No. 1940 (Proposed Judgment).

Pursuant to 15 U.S.C. § 15(a), Avnet is also entitled to its "cost of suit, including a reasonable attorney's fee."

As discussed in the accompanying Memorandum of Law, and as is established in the accompanying Declaration of Robert W. Turken, the amounts owed to Avnet's counsel, the law firm Bilzin Sumberg Baena Price & Axelrod LLP, are:

Attorney's Fees[1]: $19,073,502.44

Costs: $297,132.41

Total: $19,370,634.85

This request is based on this Notice of Motion, Memorandum of Law, the attached Declaration of Robert W. Turken, the complete files and records in this action, and such other and further matters as this Court may consider.

Dated: June 9, 2023

/s/ Scott N. Wagner
Robert W. Turken (admitted *pro hac vice*)
Scott N. Wagner (admitted *pro hac vice*)
Lori P. Lustrin (admitted *pro hac vice*)
Ilana Drescher (admitted *pro hac vice*)
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Ave., Suite 2300
Miami, Florida 33131-3456
Telephone: 305-374-7580
rturken@bilzin.com
swagner@bilzin.com
llustrin@bilzin.com
idrescher@bilzin.com
*Attorneys for Plaintiff Avnet, Inc.*

---

[1] Avnet also respectfully requests the Court award Avnet its reasonable attorney's fees and costs incurred in preparing and litigating this Motion. *See Camacho v. Bridgeport Fin'l, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (recognizing courts' ability to award fees in establishing entitlement to fees). Because Avnet cannot ascertain this amount now, it respectfully reserves the right to itemize those amounts once the Court rules on this Motion.

**MEMORANDUM OF LAW**

Plaintiff Avnet, Inc. ("Avnet") respectfully submits this Memorandum of Law in Support of its Motion for Attorney's Fees and Costs.

**INTRODUCTION**

This Motion follows a jury trial resulting in a victory for Avnet. The *Capacitors* case is an MDL that included direct and indirect plaintiff classes, and several large opt-out plaintiffs, including Avnet. Avnet is the only plaintiff in the *Capacitors* MDL action to have taken this case to verdict.

In August 2016, Bilzin Sumberg Baena Price and Axelrod, LLP ("Bilzin") filed an opt-out complaint on behalf of Avnet in the *Capacitors* case. Since then, Bilzin has actively litigated this case to its successful conclusion.

Bilzin's work on behalf of Avnet culminated in a two-week long trial against defendants NCC and UCC. Avnet sought $89,403,000 in damages at trial. The jury ultimately awarded Avnet $89,244,000 which was automatically trebled to $267,732,000.

As detailed in the accompanying Declaration of Robert W. Turken (the "Declaration"), the fees and costs incurred in achieving this favorable outcome were required by the demands of this case. Given the demands of prosecuting this seven-plus years' long case and Avnet's treble damage award of $267,732,000 following trial, Avnet respectfully requests that the Court grant Avnet the $19,073,502.44 in fees and $297,132.41 in costs requested in this Motion.

**I.     LEGAL STANDARD**

Section 4 of the Clayton Act provides that a person injured by an antitrust violation shall recover, in addition to treble damages, "the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a). "The award is mandatory, and the purpose of such an award in antitrust cases is threefold: (1) to encourage private enforcement of the antitrust laws, (2) to insulate the treble damages award from the costs of obtaining recovery, and (3) to deter violations of the antitrust laws by requiring the payment of that fee by a losing defendant as part of his penalty for having violated the antitrust laws." *Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1357 (9th Cir. 1998) (citations omitted); *see also Optronic Techs., Inc. v. Ningbo Sunny Elec., Ltd.*, 612

1

F. Supp. 3d 899, 924 (N.D. Cal. 2020) (granting prevailing party mandatory attorney's fees and costs under Section 4 of the Clayton Act).

Consistent with Section 4 of the Clayton Act's mandate and purpose, "[a] prevailing antitrust plaintiff is entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery of anti-trust damages." *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291, 1313 (9th Cir. 1982). "Courts examine a number of factors in determining whether a fee request is reasonable, including the time expended, the magnitude and complexity of the case, and the result obtained. The result obtained is said to be the most critical factor." *In re TFT-LCD Antitrust Litig.*, No. 3:07-md-01827-SI, 2014 WL 1991269, at *3 (N.D. Cal. May 12, 2014).

## II.    ARGUMENT

A.    **Avnet's Requested Fees Are Reasonable**

In the Ninth Circuit, courts use the "lodestar" method of calculating attorney's fees to assess reasonableness. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008). Courts calculate the lodestar by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *See id.* "The prevailing party must submit evidence of the appropriate hours expended on the litigation and establish that its requested hourly rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Optronic*, 612 F. Supp. 3d at 922. "There is a 'strong presumption' that the lodestar figure represents a reasonable fee." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

As set forth below, Bilzin's requested attorney's fees in the amount of $19,073,502.44 represent a reasonable attorney's fee award.

### i.    Bilzin's Hourly Rates Are Reasonable

Bilzin's hourly rates compare favorably with the prevailing market rate in similar complex antitrust cases. As set forth in the attached Declaration, Bilzin's average hourly rates over the course of this case's seven-year lifespan are: $771.80 for partners, $431.43 for associates, and

$328.49 for support staff (such as staff associates and paralegals), for a total average hourly timekeeper rate of $586.89.

Even in cases dating back almost a decade, courts in this district have approved similar rates in other antitrust cases. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI, 2013 WL 1365900, at *9 (N.D. Cal. Apr. 3, 2013) (approving award where special master set hourly rates between $1,000 and $350); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 114 F. Supp. 3d 819, 827 (N.D. Cal. 2015) (noting that plaintiffs' counsel's hourly rates were in line with those prevailing in the community where counsel's hourly rates ranged up to $985).

Bilzin's rates are below the Direct Purchaser Plaintiffs' class counsel's ("DPP class counsel") rates in this case. According to a time report filed by DPP class counsel in connection with its last-filed Motion for Attorney's Fees (which this Court granted with minimal adjustments for clerical errors), the average hourly rate for DPP class counsel's partners was approximately $1,120 and the average hourly rate for associates was $500. *See* MDL ECF No. 1714-10.

Another point of comparison are Defendants' counsel's estimated hourly rates. *See Optronic*, 612 F. Supp. 3d at 923 (comparing plaintiff's and defendant's counsels' hourly rates in determining that plaintiff's counsel's hourly rates were reasonable). Public filings in other cases reveal that defense counsel for NCC and UCC, Paul Weiss, has hourly rates that also exceed Bilzin's hourly rates. *See, e.g.*, *In re Revlon, Inc.*, Case No. 22-10760-dsj, ECF No. 1512 (Bankr. S.D.N.Y. Feb. 21, 2023) (disclosing January 2023 hourly rates for Paul Weiss partners from $2,117 to $1,525 and $1,316 to $744 for associates); *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-cv-10256-GHW, 2021 WL 4392278, at *2 (S.D.N.Y. Sept. 23, 2021) (noting that in 2021, the hourly rate for two partners at Paul Weiss was $1,485, and the associate hourly rates ranged from $958.50 to $598.50).

### ii.   Bilzin Efficiently Prosecuted this Case to Verdict

Over the course of this case, Bilzin attorneys recorded approximately $19,000,000 in time prosecuting Avnet's claims. By contrast, the DPP class counsel's lodestar was over $100,000,000. *See* MDL ECF No. 1850.

The *Capacitors* conspiracy spanned 12 years and involved numerous defendants both in the United States and abroad. Bilzin's involvement in the case on behalf of Avnet was extensive. From Avnet's entry into the case, Bilzin assumed a leading role in prosecuting the plaintiffs' claims and pursued a unique strategy.

Bilzin participated in more than 75 videotaped depositions of defendants (most of which were two-day depositions taken through a Japanese interpreter). Bilzin was lead counsel for many of these video depositions—including a number of which were ultimately used at trial. In connection with preparing for and taking defendants' depositions, Bilzin independently reviewed tens of thousands of documents produced by defendants, including thousands of documents that had not been previously identified or translated. Bilzin produced more than 300,000 Avnet documents, responded to several rounds of written discovery, and prepared for and defended depositions of current and former Avnet employees.

Bilzin took the lead on behalf of the opt-out plaintiffs in connection with both plaintiffs' and defendants' expert work. Bilzin attorneys prepared and represented Dr. Marx at her depositions and during the Hot Tub, and took the depositions of seven defense experts.

Bilzin's role in addressing the numerous complex legal issues in this case was equally prominent. Bilzin successfully defended eight summary judgment motions against Avnet as well as defendants' effort to exclude Dr. Marx's testimony. Bilzin was also the only law firm to challenge Panasonic's ACPERA status due to its failure to comply with its cooperation obligations. Finally, over the opposition of numerous defendants, Bilzin prevailed in persuading the United States District Court for the District of Arizona to take the rare step of transferring Avnet's case back to this Court for trial.

Bilzin's work in this case positioned Avnet for its successful two-week trial against defendants NCC and UCC. This was not happenstance. Bilzin prepared to take this case to trial from the outset, which is evidenced by the fact that members of the trial team accounted for over 70% of the total time billed by Bilzin.

By any standard, the result Bilzin achieved was extraordinary. Avnet sought $89,405,000 in damages. The jury awarded Avnet $89,244,000 in damages—a mere $161,000 difference (under a 1% difference) from what Avnet sought.

Opt-out antitrust cases are rarely tried to verdict, and when they are, do not typically result in verdicts of this size. *See, e.g.*, *Best Buy Co. Inc. v. AU Optronics Corp.*, 3:10CV04572, 2013 WL 12449860 (N.D. Cal. Sept. 4, 2013) (entering verdict in favor of opt-out plaintiff Best Buy in the amount of $4,471,943); *Costco Wholesale Corp. v. AU Optronics Corp.*, No. 2:13CV01207, 2014 WL 12492053 (W.D. Wash. Oct. 23, 2014) (rendering verdict in favor of opt-out plaintiff Costco in the amount of $36,573,680).

As Judge Illston observed in *In re TFT-LCD Antitrust Litig.*, No. 3:07-md-01827-SI, 2014 WL 1991269, at *3 (N.D. Cal. May 12, 2014), "[c]ourts examine a number of factors in determining whether a fee request is reasonable, including the time expended, the magnitude and complexity of the case, and the result obtained. **The result obtained is said to be the most critical factor**." (emphasis added). There can be no question that Bilzin's fees are justified in light of Avnet's victory.

After offset for prior settlements, and before any award of attorney's fees and costs, Bilzin will have recovered for Avnet—a single opt-out plaintiff—$150,677,000 from NCC and UCC. By contrast, DPP class counsel recovered $161,000,000 from NCC and UCC on behalf of the *entire* class.

On an aggregate basis, Bilzin's achievements on behalf of Avnet are even more striking. Avnet's total purchases at issue in this case were approximately one-tenth of the Direct Purchaser Class' purchases. Yet, Avnet will be entitled to recover a total of just under $300,000,000, compared to the Direct Purchaser Class' total recovery of $604,550,000. And, Bilzin was able to achieve this result at less than 20% of the DPP class counsel's lodestar.

B. **Avnet's Requested Costs Are Reasonable**

"Rule 54(d) creates a presumption for awarding costs to prevailing parties; the losing party must show why costs should not be awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003); *see also Apple Inc. v. Samsung Elecs. Co. Ltd.*, No. 5:12–CV–00630–

1  LHK, 2015 WL 4967769, at *2 (N.D. Cal. Aug. 20, 2015) ("Rule 54(d)(1) of the Federal Rules of
2  Civil Procedure creates a presumption that the prevailing party will be awarded its taxable costs.").
3  "A district court need not give reasons for abiding by the presumption and awarding taxable costs
4  to the prevailing party." *Apple*, 2015 WL 4967769, at *2.

5  Under 28 U.S.C. § 1920, taxable costs include clerk and marshal fees, transcript fees, printing fees, witness fees, exemplification fees, docket fees, court appointed expert fees, interpreter fees, and fees for special interpretation services. Local Rule 54-3 further specifies what exact costs in these broad categories are taxable.

9  Consistent with Local Rule 54-1, Avnet has attached a Bill of Costs detailing the reasonable taxable costs it seeks. Because the costs Avnet seeks are recoverable under the relevant statutes and case law, Avnet's requested costs are recoverable in full. In total, Avnet seeks $297,132.41 in costs, which is broken down into categories below.

### i. Deposition Transcripts

Avnet seeks $149,400.74 in deposition transcript fees for originals and certified copies of transcripts for approximately 150 depositions taken in this case. This amount includes costs incurred for videotaped depositions, which is consistent with Local Rule 54-3(c)(1)'s directive that "[t]he cost of an original and one copy of any deposition (including videotaped depositions) taken for any purpose in connection with the case is allowable." This figure does not include any amounts incurred for supplemental costs not taxable under the federal and local rules, such as video syncing, expedited transcript service, condensed transcripts, video dubbing, or general technology charges.

### ii. Reproduction and Exemplification

Avnet seeks $30,200.00 in reproduction and exemplification fees for costs for preparing charts, diagrams, and other visual aids to be used as exhibits, and for technical support at trial. This amount includes costs incurred for two vendors' time to support the preparation of trial demonstratives and other visual aids which were used to assist the jury and Court, but does not include time those vendors spent conferring about or planning their work. Thus, these costs are recoverable. Avnet's costs incurred for its vendors' "in-court" time providing Avnet with trial

technical support are likewise recoverable in this district because that technical support was critical to the presentation of the case. *See, e.g.*, *Emblaze Ltd. v. Apple Inc.*, No. 5:11–cv–01079–PSG, 2015 WL 1304779 at *7 (N.D. Cal. Mar. 20, 2015) (awarding costs for in-court technician where court acknowledged that trial demonstratives "could not have been presented without the appropriate technical resources.").

### iii. Interpreters

Avnet seeks $103,721.13 for deposition and trial interpreters. 28 U.S.C. § 1920(6) permits recovery for "[c]ompensation of interpreters." The bulk of this amount is for translators Avnet used for the Japanese language depositions Bilzin noticed and took independent of the class; the remainder is for the interpreters at Avnet's trial. As the Bill of Costs demonstrates, the rates charged by the interpreters hired by Avnet were consistent and reasonable. Courts in this district have awarded interpretation costs under these circumstances. *See, e.g.*, *Apple*, 2015 WL 4967769, at *2.

### iv. Printing and Copying

Avnet seeks $5,682.54 in printing and copying fees. Under Local Rules 54-3(d)(2) and (d)(4), the costs of reproducing formal discovery documents when used for any purpose in the case is allowable, as are the costs of reproducing trial exhibits to the extent that a judge requires copies be provided. Further, under 28 U.S.C. § 1920(4), "costs of making copies of any materials where the copies are necessarily obtained for use in the case" are recoverable. All of Avnet's requested printing and copying costs were incurred during or just before the two-week trial period and include materials specifically requested by the Court, such as jury notebooks, witness examination binders, and copies of trial graphics and demonstratives. These costs are per se reasonable and thus are also recoverable. *See, e.g.*, *Apple*, 2015 WL 4967769, at *2.

### v. Fees for Service of Process

Avnet seeks $8,056.00 in fees for service of process. Local Rule 54-3(a)(2) provides that "[f]ees for service of process by someone other than the marshal acting pursuant to Fed. R. Civ. P. 4(c) are allowable to the extent reasonably required and actually incurred." Avnet was required

to retain a process server to effectuate service internationally, and thus its process server fees were reasonably required and actually incurred. These costs are thus also recoverable.

### vi. Filing Fees

Finally, Avnet seeks $72.00 in filing fees. Local Rule 54-3(a)(1) explicitly allows for recovery of these and therefore, these costs are also recoverable.

### CONCLUSION

For these reasons, Avnet respectfully requests that the Court grant this Motion and award Avnet $19,073,502.44 in attorney's fees and $297,132.41 in costs for a total of $19,370,634.85.

Dated: June 9, 2023

/s/ Scott N. Wagner
Robert W. Turken (admitted *pro hac vice*)
Scott N. Wagner (admitted *pro hac vice*)
Lori P. Lustrin (admitted *pro hac vice*)
Ilana Drescher (admitted *pro hac vice*)
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Ave., Suite 2300
Miami, Florida 33131-3456
Telephone: 305-374-7580
rturken@bilzin.com
swagner@bilzin.com
llustrin@bilzin.com
idrescher@bilzin.com

*Attorneys for Plaintiff Avnet, Inc.*

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing document was served via e-mail through the CM/ECF system for the Northern District of California on all counsel of record on June 9, 2023.

/s/ Scott N. Wagner
Scott N. Wagner